UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WALSH CONSTRUCTION COMPANY II, LLC, ARCH SPECIALTY INSURANCE COMPANY, <br><br> Defendants. | CASE NO. 2:22-CV-589-RSM-DWC <br><br> REPORT AND RECOMMENDATION <br><br> Noting Date: October 13, 2023 |
| WALSH CONSTRUCTION COMPANY II LLC, <br><br> Third Party Plaintiff, <br><br> v. <br><br> GREENWICH INSURANCE COMPANY, <br><br> Third Party Defendant. | |

    The District Court referred this action to Chief United States Magistrate Judge David W.

Christel. Dkt. 10. Currently before the Court is Plaintiff Travelers Property Casualty Company of

America's Motion for Partial Summary Judgment (Dkt. 32), Third-Party Defendant Greenwich

Insurance Company's Motion for Partial Summary Judgment on Scope of Additional Insured

Endorsement (Dkt. 49), Defendant Walsh Construction Company II, LLC's Motion for Partial Summary Judgment Re Travelers Property Casualty Co. of America's Duty to Defend (Dkt. 48), Defendant Walsh Construction Company II, LLC's Motion for Partial Summary Judgment Re Greenwich's Duty to Defend (Dkt. 44), and Defendant Arch Specialty Insurance Company's Motion for Summary Judgment of Claims Brought Against Arch Specialty Insurance Company (Dkt. 36).

Based on the evidence presented to this Court, the Court finds Travelers and Greenwich have a duty to defend Walsh as an additional insured in the underlying action. Walsh has also shown that Greenwich breached the duty to defend. Travelers and Greenwich have failed to show their duties to defend and indemnify terminated when a subcontractor was dismissed with prejudice from the underlying action. Additionally, Arch has shown Walsh did not affirmatively tender defense of the underlying action to Arch. Accordingly, the Court recommends Travelers' motion for partial summary judgment (Dkt. 32) be denied, Greenwich's motion for partial summary judgment (Dkt. 49) be denied, Walsh's motion for partial summary judgment as to Travelers (Dkt. 48) be granted-in-part and denied-in-part, Walsh's motion for partial summary judgment as to Greenwich (Dkt. 44) be granted, and Arch's motion for summary judgment (Dkt. 36) be granted and Arch be dismissed without prejudice.

## I.    Background

Travelers filed this lawsuit seeking declaratory relief against Walsh and Arch. Dkt. 1. In the Complaint, Travelers alleges King County hired Walsh to serve as the general contractor for King County's South Magnolia Combined Sewer Overflow Control Project ("the Project"). *Id*. at ¶ 3.2. Underground Solutions, Inc. ("UGSI") and Walsh entered into a purchase order agreement in August of 2014. *Id*. at § 3.7. UGSI agreed to provide Walsh with all materials, equipment, and

1    labor to fully fabricate and deliver 30-inch fusible polyvinyl chloride ("fPVC") pipe and perform

2    fusion services. *Id*. In late 2016, King County determined there was a break in the pipeline

3    causing damages. *Id*. at ¶ 3.9.

4         On September 30, 2020, King County filed its First Amended Complaint ("FAC") against

5    Walsh in state court ("underlying action"). *Id*. at ¶ 3.13. Walsh filed an amended third-party

6    complaint ("TPC") against UGSI and another subcontractor on the Project, Mears Group, Inc. *Id*.

7    at ¶ 3.15. On February 4, 2022, the state court granted summary judgment in favor of UGSI and

8    dismissed UGSI with prejudice. *Id*. at ¶ 3.18.

9         On May 2, 2022, Travelers filed this action seeking a judicial declaration that Travelers

10   no longer has a duty to defend Walsh. Travelers also seeks a determination that an insurance

11   policy issued by Arch to Walsh is primary. *Id*. at 13. Walsh filed an answer, counterclaim and

12   third-party complaint. Dkt. 14. Walsh named Greenwich as a third-party defendant. *Id*.

13        The parties have now filed motions for partial summary judgment seeking the following

14   judicial declarations: (1) Walsh seeks judicial declarations that both Travelers and Greenwich

15   have a duty to defend in the underlying action, Greenwich breached its duty to defend, and

16   Travelers owes defense costs from the date the underlying action was initiated through the date

17   Travelers accepted Walsh's tender with a reservation of rights (Dkts. 44, 48); [1] (2) Travelers and

18   Greenwich seek judicial declarations that they have no current and future duty to defend Walsh

19   as an additional insured in the underlying action (Dkts. 32, 49); and (3) Arch seeks a judicial

20   declaration that Walsh has not tendered a duty to defend to Arch and, therefore, Arch has no duty

21

22        [1] The Court notes Walsh filed two separate motions for partial summary judgment on the same issue –
whether Travelers and Greenwich have a duty to defend. Dkts. 48, 49. Under Local Civil Rule 7(e), "[a]bsent leave

23   of the court, a party must not file contemporaneous dispositive motions, each one directed toward a discrete issue or
claim." Walsh did not have leave of Court to file contemporaneous dispositive motions. The Court directs all parties
to ensure their future filings comply with the Local Civil Rules.

24

REPORT AND RECOMMENDATION - 3

1    to defend in the underlying action (Dkt. 36). All briefing is complete, *see* Dkts. 32-37, 44-50, 53-

2    60, 62-71, and the Court held oral argument on September 15, 2023.

3    **II.    Standard of Review**

4        Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

5    file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

6    movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

7    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

8    showing on an essential element of a claim in the case on which the nonmoving party has the

9    burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

10   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

11   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

12   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

13   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

14   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

15   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

16   *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

17   626, 630 (9th Cir. 1987).

18   **III.    Discussion**

19       Walsh asserts Travelers and Greenwich have a duty to defend Walsh in the underlying

20   action. Dkts. 44, 48. Travelers and Greenwich do not dispute that they had a duty to defend, but

21   assert that the duty to defend terminated when UGSI was dismissed with prejudice from the

22   underlying action. Dkts. 32, 49. Finally, Arch contends Walsh never tendered a defense to Arch

23   and, therefore, Arch has no duty to defend. Dkt. 36.

24

1    A.    <u>Legal Standard</u>

2    Under Washington law, an insurer owes its insured two primary duties: the duty to

3    indemnify and the duty to defend. *See Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d

4    398, 229 P.3d 693, 696 (2010). The duty to indemnify—that is, the duty to pay the legal

5    obligation of the insured for covered claims—only exists at the time liability is assessed, and

6    only if the insurance policy covers the conduct giving rise to the liability. *Id.* The duty to defend,

7    on the other hand, is much broader, and is triggered at the time an action within the terms of the

8    policy is initiated against the insured. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d

9    751, 58 P.3d 276, 282 (2002). The duty to defend imposes an obligation to represent the

10   insured's interests throughout the lifecycle of the claims against it, including requiring the

11   insurer to pursue a fair settlement of the claims. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*,

12   165 Wash.2d 122, 196 P.3d 664, 669 (2008).

13   The duty to defend "arises at the time an action is first brought, and is based on the

14   potential for liability." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53 (2007). An insurer

15   has a duty to defend "'when a complaint against the insured, construed liberally, alleges facts

16   which could, if proven, impose liability upon the insured within the policy's coverage.'" *Id.* at 53

17   (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999)). "The duty to defend

18   generally is determined from the 'eight corners' of the insurance contract and the underlying

19   complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803 (2014). There are two

20   exceptions to this rule. *Id*.

21       First, if coverage is not clear from the face of the complaint but coverage could
         exist, the insurer must investigate and give the insured the benefit of the doubt on
22       the duty to defend. Second, if the allegations in the complaint conflict with facts
         known to the insurer or if the allegations are ambiguous, facts outside the complaint
23       may be considered. However, these extrinsic facts may only be used to trigger the
         duty to defend; the insurer may not rely on such facts to deny its defense duty.
24

*Id*. at 803-04 (internal citations omitted). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Woo*, 161 Wn.2d at 53.

    B.  Background Evidence[2]

      The underlying action arose from physical damage to the Project and the Conveyance Pipe. *See* Dkt. 33-1. The Project, "a public works facility intended to limit the discharge of wastewater into Elliott Bay during significant storm events," included "two new wastewater diversion structures, a CSO storage facility . . . at the foot of Magnolia Hill, and a roughly 3,100 lineal foot underground pipe (the 'Conveyance Pipe') to convey the overflow wastewater from the upper diversion structure through the lower diversion structure and to the CSO storage tank, as needed." *Id*. "King County was required to construct the Project and demonstrate control of overflow wastewater by December 31, 2015 by virtue of a Consent Decree[.]" *Id*. King County hired Walsh to serve as the general contractor for the Project. *Id*. at ¶ 3.2. To complete the Project, on May 19, 2014, Walsh entered into a purchase order agreement with UGSI, wherein UGSI agreed to "furnish all materials, equipment, insurance, and taxes as required to fully fabricate, deliver F.O.B. all . . . 3,073 lf of 30" diameter FPVC[.]" Dkt. 45-1 at 45.

      In the underlying action, King County alleged that, on December 19, 2014, "while attempting to complete pullback of the fPVC Conveyance Pipe, Walsh (by and through Mears) damaged the pullhead assembly inside the conductor casing. Pull forces measured at the time of

---

[2] Under this Court's filing procedures, "[i]f the original document requires the signature of a non-e-filer, the filing party may (a) scan the entire document, including the signature page, (b) attach the scanned signature page to an electronic version of the filing, and/or (c) utilize an electronic signature that is recognized as valid under federal law." U.S. District Court, Western District of Washington Electronic Filing Procedures for Civil and Criminal Cases, Sec. L. ("Electronic Filing Procedures"). It is not clear from the record that all the submitted declarations comply with the Electronic Filing Procedures. *See* Dkts. 33, 37, 46. As no parties have objected to the declarations, the Court will consider all declarations. However, if any party wishes to correct an improperly signed document, that party should do so before October 13, 2023.

the pullhead assembly damage exceeded the safe maximum loads identified by . . .UGSI." Dkt. 33-1 at ¶ 20.

King County issued a Certificate of Substantial Completion for the Project effective December 22, 2015. *Id*. at ¶ 21. Then, in September of 2016, King County discovered the upper diversion structure was filled with wastewater and, upon further investigation, determined the Conveyance Pipeline was blocked and had fractured. *Id*. at ¶ 23. King County alleged that it believed the Conveyance Pipe and the Project began to sustain physical damage beginning in December of 2014 upon the failure of the pullhead assembly. *Id*.

Evidence shows King County determined a break in the pipeline occurred sometime between March 12, 2015 and December 22, 2015. Dkt. 63-2 at 3. King County sent a letter to Walsh on December 21, 2016 notifying Walsh of the potential for a warranty claim "resulting from defective equipment, material, design, or workmanship with regards to the 30-inch Fusible PVC Conveyance pipeline that was installed by [Walsh's] Subcontractor, Mears Group, Inc." Dkt. 63-1 at 2. Discovery responses also show King County believed "UGSI's fusion weld of the joint where the fracture(s) occurred was incomplete and defective, reducing the strength of the welded connection." Dkt. 45-1 at 18. King County identified UGSI's work as non-compliant with contract documents. *Id*. at 17.

King County initiated the underlying action on June 16, 2020. Dkt. 45-1. On September 30, 2020, King County filed the FAC in the underlying action, which named only Walsh and Travelers as defendants. Dkt. 33-1. Walsh filed the TPC on November 25, 2020. Dkt. 33-4. In the TPC, Walsh named Mears Group Inc., Federal Insurance Company and Liberty Mutual Insurance Company, and UGSI as third-party defendants. *Id*. Walsh alleged UGSI "may have negligently performed defective work and/or negligently supplied defective products or materials

1    for the construction and installation of the conveyance pipe, which is alleged to have resulted in

2    damage to tangible property other than UGSI's . . . work." *Id*. at ¶ 2.10.

3        C.  Motions related to Travelers' and Greenwich's Duty to Defend

4        Travelers and Greenwich have separately moved for partial summary judgment seeking a

5    Court determination that both Travelers' and Greenwich's duty to defend terminated when the

6    state court dismissed UGSI from the underlying action with prejudice. Dkts. 32, 49. Walsh

7    moves for partial summary judgment against Travelers and Greenwich seeking a Court

8    determination that both Travelers and Greenwich have a duty to defend. Dkts. 44, 48. Walsh also

9    seeks a determination that Greenwich breached its duty to defend and a declaration that

10   Travelers' duty to defend includes any defense costs incurred between the time of the filing of

11   the underlying action and Travelers' acceptance of the tender. Dkts. 44, 48.

12       The relevant evidence shows that, on May 19, 2014, UGSI and Walsh entered into a

13   purchase order agreement, wherein UGSI agreed to "furnish all materials, equipment, insurance,

14   and taxes as required to fully fabricate, deliver F.O.B. all . . . 3,073 lf of 30" diameter FPVC[.]"

15   Dkt. 45-1 at 45. UGSI agreed to provide additional insured status to Walsh. *Id*. at 51.  The

16   agreement additionally states UGSI

17           [s]hall indemnify, defend (with counsel reasonably satisfactory to [Walsh]), and
18           save harmless [Walsh] against claims, costs and expenses which are in any manner
             caused, or claimed to be caused, through any act, or omission of [UGSI], anyone
             acting under its direction, control, or on its behalf or for which it is legally
19           responsible, in connection with [UGSI's] work. [UGSI's] obligation to provide a
             defense for an indemnified party shall arise regardless of the merits of the matter
20           and shall continue until a final determination of fault is made.

21           [UGSI], however, shall be relieved of and shall have no further obligation to
22           indemnify an indemnified party under th[e] agreement upon a final determination
             that [UGSI] was not liable or any determination by the court that any single
             indemnitee is solely negligent[.]
23

24

1   *Id*. Under the agreement, UGSI also agreed to carry and maintain comprehensive general liability

2   insurance covering personal injury and damage to property. *Id*. Moreover, UGSI agreed to

3   maintain coverage without interruption until the date of final payment and agreed to maintain

4   completed operations coverage for a minimum of three years subsequent to the final payment. *Id*.

5           i.   Travelers' Duty to Defend

6           As stated above, at issue before the Court with regards to Travelers is whether (1)

7   Travelers had a duty to defend; (2) Walsh is entitled to an order declaring Travelers' duty to

8   defend includes any defense costs incurred between the time of the filing of the underlying

9   action and Travelers' acceptance of the tender under a reservation of rights; and (3) Travelers'

10  duty to defend has terminated.

11          *Evidence.* The policy issued to UGSI by Travelers states Travelers

12          will pay those sums that the insured becomes legally obligated to pay as damages
            because of "bodily injury" or "property damage" to which this insurance applies.
13          [Travelers] will have the right and duty to defend the insured against any "suit"
            seeking those damages.
14
15  Dkt. 33-3 at 5. The insurance coverage applies to bodily injury and property damage, in relevant

16  part, if the "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in

17  the 'coverage territory'" . . . and it occurred during the policy period. *Id*. The Travelers' policy

18  states that an insured includes "any person or organization that [UGSI] agree in a 'written

19  contract requiring insurance' to include as an additional insured on this Coverage Part, but:"

20          [i]f, and only to the extent that, the injury or damage is caused by acts or omissions
            of you or your subcontractor in the performance of "your work" to which the
21          "written contract requiring insurance" applies. The person or organization does not
            qualify as an additional insured with respect to the independent acts or omissions
22          of such person or organization.

23  *Id*. at 7.

24

On December 21, 2020, Travelers sent a letter to Walsh advising Walsh that Travelers determined it will defend Walsh as an additional insured related to the underlying action with a full and express reservation of rights, including the right to withdraw from the defense or deny coverage. Dkt. 33-4 at 2.

*Duty to Defend.* Based on the language of the policy, Walsh has coverage under the Travelers' policy if the property damage was "caused by" the acts of UGSI or its subcontractor during the performance of its work under the contract between Walsh and UGSI. If the damage was caused solely by Walsh's independent acts, there is no coverage under Travelers' policy.

The FAC alleges that Walsh subcontracted with UGSI to provide fPVC pipe and perform on-site "fusing" services to join lengths of the fPVC pipe. Dkt. 33-1. The FAC alleges Walsh, by and through Mears, damaged the pullhead assembly inside the conductor casing when attempting to complete the pullback of the fPVC. *Id*. King County alleged that the conveyance pipe and Project began to sustain physical damage upon the failure of the pullhead assembly. *Id*. Walsh then filed the TPC alleging UGSI may have negligently performed defective work and/or negligently supplied defective products or materials for the construction and installation of the conveyance pipe, which is alleged to have resulted in damage to tangible property. Dkt. 33-2.

Travelers admits "the complaint as drafted in the Underlying Lawsuit alleged potentially covered 'property damage' caused by an 'occurrence'." Dkt. 54 at 6.

Based on the record before the Court and the concession of Travelers, the allegations in the underlying action triggered Travelers' duty to defend Walsh. The FAC, TPC, and discovery responses implicated covered property damage caused by acts or omissions of UGSI. While the FAC does not specifically allege UGSI's work caused the damage, the FAC can conceivably be read to assert liability against UGSI. The FAC alleges damages resulting from the fPVC pipeline,

which UGSI was responsible for providing and performing on-site fusing. The Conveyance Pipe broke, causing the damage. Therefore, the FAC *conceivably* triggered Travelers' duty to defend. To extent the FAC is ambiguous, facts outside the complaint may be considered. In response to an interrogatory asking King County to identify all work that King County claimed was non-complaint, King County stated UGSI's fusion weld of the joint where the fracture(s) occurred was incomplete and defective, reducing the strength of the welded connection. Dkt. 45-1 at 18. A May 2018 letter indicated that the "fusion joint at this area also shows deficiencies." *Id*. This additional information related to King County's claims supports the finding that the FAC triggered Travelers' duty to defend Walsh. Additionally, the TPC clearly alleges UGSI is at fault for negligently performing defective work or providing defective products that caused the damage. Accordingly, the allegations contained in the FAC and TPC triggered Travelers' duty to defend.

*Payment of Defense Costs.* Walsh, in a single sentence, moves for a declaration that Travelers' duty to defend includes any defense costs incurred between the time of the filing of the underlying action and Travelers' acceptance of the tender with a reservation of rights. Dkt. 48 at 6. Walsh provides no citations to the record or to any legal authority to support its position that it is entitled to a determination regarding defense costs from the period of time between the initiation of the underlying action and Travelers' acceptance of the tender with a reservation of rights. *See id*. Walsh has not cited to the insurance policy to show the scope of the coverage. Further, Walsh has not provided any evidence regarding *when* it tendered this action to Travelers. Therefore, at this time, Walsh has not shown there is no genuine issue of material fact regarding whether Walsh is entitled to a declaration that Travelers' duty to defend includes *any*

1    defense costs incurred between the time of the filing of the underlying action and Travelers'

2    acceptance of the tender with a reservation of rights.

3    *Termination of Duty to Defend.* Finally, Travelers moves for a declaration that its duty to

4    defend terminated when UGSI was dismissed from the underlying action. Dkt. 32. In the

5    underlying action, UGSI moved for summary judgment on the basis that there was "no evidence

6    to support allegations that UGSI's product was defective, failed to meet standards, or caused the

7    loss at issue." Dkt. 34-1 at 3. A review UGSI's motion for summary judgment and responsive

8    pleadings indicates the only admissible evidence related to UGSI's liability was evidence

9    showing the fPVC pipe broke. Dkt. 55. The Court notes the parties did not submit the evidence

10   that was presented to the state court in support of or in response to UGSI's motion for summary

11   judgment. *See id*. . On February 4, 2022, the state court granted UGSI's motion for summary

12   judgment and dismissed UGSI from the underlying action with prejudice. Dkt. 57-8 at 6-9.

13   The state court also granted King County's motion for partial summary judgment,

14   striking certain affirmative defenses of Walsh. Dkt. 46, Persoon Dec., ¶ 3. That decision was

15   appealed and, on July 3, 2023, the state court of appeals remanded the case for further

16   proceedings after finding the trial court erred when it dismissed with prejudice any defense based

17   on alleged defective design. *Id*.; *King Cty. v. Walsh Const. Co. II, LLC*, 2023 WL 4311465

18   (Wash. App. July 3, 2023). The parties do not dispute the underlying action is still ongoing.

19   Travelers argues it no longer has a duty to defend Walsh because, now that UGSI has

20   been dismissed from the underlying action with prejudice, there is no coverage under Travelers'

21   policy. Dkt. 32. "[T]he duty to defend terminates upon the resolution of the underlying claims

22   and litigation against [the additional insured]." *Arch Ins. Co. v. Scottsdale Ins. Co.*, 2010 WL

23   4365817, at *5 (W.D. Wash. Oct. 27, 2010). At this time, litigation remains pending against

24

Walsh, the additional insured. The Court recognizes that coverage under the Travelers policy is limited to damages caused by the acts or omissions of UGSI. However, the underlying action remains pending against Walsh and Travelers has not shown the state court's decision, alone, removes all potential for Walsh to be covered under the Travelers policy.

As the parties do not dispute the underlying claims against Walsh are still pending and as Travelers has not sufficiently shown there is no potential for coverage under the policy, Travelers' duty to defend should not be terminated at this time. *See MidMountain Contractors Inc. v. Am. Safety Indem. Co.*, 893 F. Supp. 2d 1096 (W.D. Wash. 2012), *order stricken in part sub nom. Midmoutain Contractors, Inc. v. Am. Safety Indem. Co.*, 2013 WL 5492952 (W.D. Wash. Oct. 1, 2013) (declining to grant summary judgment regarding the termination of a duty to defend and finding, under Washington law, dismissal with prejudice of an insured subcontractor from underlying litigation does not relieve insurer of its duty to defend the general contractor as an additional insured); *see also Goodstein v. Cont'l Cas. Co.*, 509 F.3d 1042, 1056 (9th Cir. 2007) (citing *Overton v. Consol. Ins. Co.,* 145 Wash.2d 417, 38 P.3d 322, 334 (2002) ("An insurer's duty to defend is a continuing one, and does not end until the underlying action is resolved or it is shown that *there is no potential for coverage.*" (emphasis added)); *Costco Wholesale Corp. v. United Nat. Ins. Co.*, 2009 WL 4430869, at *3 (W.D. Wash. Nov. 30, 2009) (reviewing the complaint in the underlying action and finding insurer's duty to defend an additional insured did not terminate based on rulings by the state court).

Travelers cites to *Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1303 (W.D. Wash. 2010) to support terminating the duty to defend. However, in *Adair Homes*, the court was determining whether the claims, as pled in the underlying complaint, were covered under the insurance policy. The court found there was no coverage under the policy exclusions.

Here, Travelers concedes, and the Court finds, the claims alleged in the FAC, related discovery responses, and the TPC are covered by the Travelers' policy. As such, *Adair Homes* is not instructive in this case.

Travelers has not cited to any case law that dictates the result requested, nor has Travelers shown there is no potential coverage under the policy for Walsh as an additional insured. Even if UGSI is no longer a party to the underlying action, it remains possible that Walsh will be held liable for damages caused by the acts of omissions of UGSI. Therefore, the Court finds Travelers has not shown that, simply because UGSI was dismissed from the underlying action with prejudice, Travelers' duty to defend has or should terminate.

*Conclusion.* The Court finds Travelers' motion for partial summary judgment should be denied. The Court also finds Walsh's motion for partial summary judgment as to Travelers' duty to defend should be granted; however, Walsh's request for a declaration stating Travelers' duty to defend includes any defense costs incurred by Walsh from the time the underlying action was filed through Travelers' acceptance of Walsh's tender with a reservation of rights should be denied.

### ii.  Greenwich's Duty to Defend

At issue before the Court with regards to Greenwich is whether (1) Greenwich had a duty to defend; (2) Greenwich breached its duty to defend; (3) Greenwich has a duty to indemnify; and (4) Greenwich's duty to defend Walsh has terminated.

*Evidence.* Greenwich insured Aegion Corporation, who acquired UGSI, under policy number CGD3000849 from July 1, 2015 though July 1, 2016. Dkt. 45-2 at 70. The policy states Greenwich

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

[Greenwich] will have the right and duty to defend the insured against any "suit" seeking those damages.

*Id*. at 75. The coverage applies, in relevant part, to bodily injury and property damage if the "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" . . . and it occurred during the policy period. *Id*. at 75. Per the policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 89. The policy listed additional insureds as "any person or organization that you are required in a written contract or written agreement to include as an additional insured provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the written contract or written agreement." *Id*. at 91. Further, the additional insured is covered "only with respect to liability arising out of 'your work' at the location designated or described in the schedule[.]" *Id*. at 93.

On January 6, 2017, Walsh sent a letter to UGSI, wherein Walsh notified UGSI of the incident related to the Project and stated that Walsh and King County "wish to tender its defense and indemnification to the insurer of [UGSI] in relation to this incident." Dkt. 45-1 at 43. Walsh requested UGSI place its carrier on notice of the incident and tender. *Id*.

On June 30, 2017, Greenwich received notice of a claim asserted by Walsh against UGSI. *See* Dkt. 59, Kha Dec., ¶ 2; Dkt. 45-1 at 36. In the email, UGSI's broker, Lockton, stated Walsh was requesting "D&I." Dkt. 59, Kha Dec., ¶ 3; Dkt. 45-1 at 37. "The email attached a notice of claim by Walsh against UGSI that enclosed a copy of a contract between Walsh and UGSI that required UGSI to defend and indemnify Walsh against certain claims." Dkt. 59, Kha Dec., ¶ 3; *see also* Dkt. 45-1 at 43-78. John Kha, a Senior Claims Specialist with authority to act on behalf of Greenwich, opened a new file reflecting the insured as Aegion (UGSI's parent corporation) and the "Claimant" as Walsh. Dkt. 59, Kha Dec., ¶ 4; *see also* Dkt. 45-1 at 35. Mr. Kha stated,

1    "there was no tender by Walsh to Greenwich for Walsh's own potential liability." Dkt. 59, Kha

2    Dec., ¶ 4. However, Greenwich claim notes indicate Walsh made an additional insured tender to

3    Greenwich related to the pipeline work on July 20, 2017. Dkt. 45-2 at 3.

4        On June 19, 2020, Walsh sent a letter to UGSI requesting defense and indemnity from

5    UGSI and its insurance carrier related to the Project and provided a copy of the complaint filed

6    in the underlying action. Dkt. 45-2 at 5. This letter states that "Walsh, on its own behalf and on

7    behalf of Travelers, hereby tenders their defense and indemnification to UGSI and its insurer in

8    relation to this incident." *Id*. Walsh requested UGSI "provide notice and forward th[e] tender of

9    defense and indemnification for all relevant carriers with whom [UGSI] ha[s] an insurance

10   policy applicable to this loss." *Id*.

11       On June 20, 2020, King County filed suit against Walsh and Travelers. *See* Dkt. 33-1.

12   Mr. Dykstra, counsel for Walsh, sent a letter to Greenwich on January 20, 2022, tendering its

13   defense and indemnity to Greenwich as an additional insured under three policies issued to UGSI

14   by Greenwich. Dkts. 50-1; 45-2 at 8. On January 20, 2022, Greenwich received Walsh's

15   additional insured tender and noted in the file that "[t]here has been no [Additional Insured]

16   tender from Walsh directed to GCI [Greenwich Insurance Company] since King County filed its

17   lawsuit in 2020." Dkt. 60, Klingsporn Dec., ¶ 3; *see also* Dkts. 50-1, 65-1 at 2. The claim file

18   note indicates "Walsh's original tender to Aegion/USI was pre-litigation." Dkt. 65-1 at 2.

19   Greenwich stated it acknowledged the tender on February 1, 2022. Dkt. 60, Klingsporn Dec., ¶ 4.

20       On June 23, 2023, Greenwich agreed to participate in defending Walsh in the underlying

21   action under policy no. CGD3000849 while reserving all rights, but declined the tender under

22   policy nos. CDG300084901 and CGD30084902. Dkt. 50-1. Greenwich also reserved its rights to

23

24

1   limit coverage, withdraw its agreement to defend, and/or recoup paid amounts based on Walsh's

2   failure to provide timely and adequate notice as required under the policies. *Id*. at 59.

3           In response to Walsh's motion, Greenwich states it "does not dispute that the King

4   County complaint raises sufficient allegations and has agreed to defend[.]" Dkt. 58 at 8.

5           *Duty to Defend*. Based on the record before the Court and the concession of Greenwich,

6   the Court concludes the allegations in the underlying action triggered Greenwich's duty to

7   defend as the allegations in the FAC and TPC implicated covered "property damage" caused by

8   an "occurrence" that arose out of UGSI's work. As stated above, while the FAC does not

9   specifically allege UGSI's work caused the damage, the FAC can conceivably be read to assert

10  liability against UGSI. Further, to the extent the FAC is ambiguous, looking to outside

11  documentation, King County explained that it believed UGSI's work was non-complaint because

12  UGSI's fusion weld of the joint where the fracture(s) occurred was incomplete and defective.

13  Dkt. 45-1 at 18. *Id*. This additional information related to King County's claims supports the

14  finding that the FAC triggered Greenwich's duty to defend Walsh. Additionally, the TPC clearly

15  alleges UGSI is at fault for negligently performing defective work or providing defective

16  products that caused the damage. Accordingly, the allegations contained in the FAC and the TPC

17  triggered Greenwich's duty to defend Walsh.

18          While Greenwich argues the Court should decline to issue a declaration stating

19  Greenwich has a duty to defend because Greenwich agreed to defend, the Court is not persuaded

20  by this conclusory argument.

21          *Breach of Duty*. Walsh asserts Greenwich's failure to timely respond to its tender resulted

22  in a breach of Greenwich's duty to defend. Dkt. 44. "Most Washington cases recite that the

23  insurer's duty to defend is triggered when a complaint is filed against the insured." *United*

24

*Services Auto. Ass'n v. Speed*, 179 Wash. App. 184, 195 (2014). This is because most policies require the insurer to defend only in a "suit" against an insured. *Id*. Under the Greenwich policy, Greenwich has the right and duty to defend the insured against any "suit" seeking damages. Dkt. 45-2 at 75. Therefore, the Court finds Greenwich's duty to defend was not triggered until the underlying action – the suit – was filed. The evidence shows that, after the underlying action was filed, Walsh tendered a defense to Greenwich on January 20, 2022, when Richard Dykstra, Walsh's counsel, sent a letter to Greenwich. Dkts. 50-1; 45-2 at 8. Greenwich acknowledged the tender twelve (eight business) days later, on February 1, 2022. *See* Dkt. 60, Klingsporn Dec., ¶ 4. However, Greenwich did not agree to participate in defending Walsh in the underlying action until June 23, 2023. Dkt. 50-1.

"Under Washington law, an insurer in receipt of a claim tendered by its insured has three options: defend, defend under a reservation of rights, or deny its duty to defend." *Becker v. TIG Ins. Co.*, 2022 WL 17976097, at *8 (W.D. Wash. Dec. 28, 2022), *appeal dismissed*, 2023 WL 4572316 (9th Cir. June 5, 2023). While Greenwich acknowledged the tender on February 1, 2022, the record shows Greenwich did not provide Walsh with a response until nearly seventeen months later. At that time, Greenwich determined it would defend under a reservation of rights. Walsh has shown Greenwich's lengthy delay in providing a response to Walsh was a breach of the duty to defend. *See Ledcor Indus. (USA), Inc. v. Mut. Of Enumclaw Ins. Co.*, 150 Wash. App. 1, 9, 206 P.3d 1255, 1260 (2009) (finding sending acceptance of tender and reservation of rights letter 14 months after the tender was a breach of the insurer's duty of good faith and fair dealing); *Kirby v. Hartford Casualty Insurance Co.*, 2004 WL 2165367 (N.D.Tex. Sept. 23, 2004) (finding that delay of approximately one year breached the duty to defend).

1    Greenwich asserts that the state court dismissed the action with prejudice against UGSI

2    days after it acknowledged Walsh's tender and, as such, there could be no breach of duty for

3    failing to timely respond to the tender of defense. *See* Dkt. 58. "[E]ven where there are extrinsic

4    facts suggesting the claim may ultimately prove meritless or outside the policy's coverage, the

5    insurer cannot avoid its obligation to provide a defense. While facts outside the complaint may

6    be relied upon to *expand* an insurer's duty to defend, they may not be utilized by the insurer to

7    deny the duty to defend." *Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F. Supp. 2d 1146,

8    1157 (E.D. Wash. 2009). A review of the FAC and TPC shows Greenwich's duty to defend

9    Walsh was triggered when the underlying action was filed. UGSI's dismissal from the

10    underlying action is, therefore, immaterial to the issue of whether Greenwich had a duty to

11    timely respond to the tender and defend the underlying action.

12    In response to Walsh's Motion, Greenwich moves for a continuance to conduct discovery

13    under Federal Rule of Civil Procedure 56(d). Dkt. 58 at 12-13. A party requesting a continuance,

14    denial, or other order under Rule 56(d), must show: (1) it has set forth in affidavit form the

15    specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the

16    sought-after facts are essential to oppose summary judgment. *See Family Home & Fin. Ctr., Inc.*

17    *v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *Cal. on behalf of*

18    *Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Failure

19    to comply with these requirements "is a proper ground for denying discovery and proceeding to

20    summary judgment." *Id.* (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439,

21    1443 (9th Cir. 1986)).

22    Greenwich argues Walsh's delayed tender excused any breach of Greenwich's duty to

23    defend and Greenwich should be allowed to conduct discovery to provide evidence of this to the

24

1    Court. Dkt. 58 at 12-13. "The 'late tender' rule provides that an insured's breach of an insurance

2    contract through failure to notify the insurer of a claim does not relieve the insurer of the

3    obligation to perform under the insurance contract unless the insurer can prove that the late

4    notice caused it actual and substantial prejudice." *Mut. of Enumclaw Ins. Co.*, 164 Wash. 2d at

5    422. Viewing the evidence in the light most favorable to Greenwich, Walsh did not tender

6    defense of the suit to Greenwich until January 20, 2022, which was nineteen months after King

7    County filed suit against Walsh. Dkts. 50-1; 45-2 at 8.

8        Greenwich has not provided evidence to show any late notice caused it actual and

9    substantial prejudice. Evidence shows, on June 30, 2017, Greenwich was on notice the Walsh

10   was requesting defense and indemnity. Dkt. 45-1 at 36-37. Moreover, Walsh tendered a defense

11   to Greenwich on July 20, 2017, prior to the underlying action being filed. Dkt. 45-2 at 3.

12   Furthermore, the underlying action is currently stayed and Greenwich has not shown any

13   decision has been issued in the underlying action that resulted in actual and substantial prejudice

14   to Greenwich.  Greenwich now requests a Rule 56(d) continuance to conduct discovery to prove

15   any late tender caused prejudice. Greenwich, however, has not provided an affidavit in support

16   of its request for a Rule 56(d) continuance. *See* Dkt. 58 at 12-13. Greenwich has not set forth

17   facts it hopes to elicit from further discovery, the facts sought, or that the sought-after facts are

18   essential to oppose Walsh's Motion or show actual and substantial prejudice excused

19   Greenwich's breach of duty. The Court further notes that, while some discovery has been stayed,

20   discovery related to the duty defend and issues relating to whether Walsh is entitled to defense or

21   indemnity under the Greenwich policy was not stayed. *See* Dkt. 52. Greenwich has also not

22   shown it attempted to obtain the now-desired discovery. As Greenwich has failed to comply with

23

24

REPORT AND RECOMMENDATION - 20

1  the Rule 56(d) requirements, the Court finds the request for a Rule 56(d) continuance should be

2  denied.

3        In summation, the Court finds Walsh has submitted evidence showing there is no genuine

4  issue of material fact regarding whether Greenwich had a duty to defend and breached that duty.

5  Greenwich has not sufficiently refuted Walsh's showing. And, while Greenwich has requested a

6  Rule 56(d) continuance to obtain evidence to show the breach is excused, Greenwich failed to

7  meet the requirements of a Rule 56(d) request to continue this Motion to obtain additional

8  discovery. Therefore, the Court finds Walsh's Motion, which requests a declaration that

9  Greenwich had a duty to defend and breached that duty, should be granted.

10        *Termination of Duty to Defend.* Finally, Greenwich moves for a declaration from the

11  Court stating its duty to defend terminated when UGSI was dismissed from the underlying

12  action. Dkt. 49. Greenwich's policy language states coverage exists for damages "arising out of"

13  UGSI's work, which is broader than Travelers' policy language.[3] The Court need not restate the

14  findings above related to Travelers' on-going duty to defend Walsh. The findings likewise apply

15  to Greenwich. As stated above, even if UGSI is no longer a party to the underlying action, it

16  remains possible that Walsh will be held liable for damages arising out of the acts of omissions

17  of UGSI. As the claims as alleged in the FAC and TPC give rise to a duty to defend under the

18  Greenwich policy, the Court finds Greenwich has not shown that, simply because UGSI was

19  dismissed from the underlying action with prejudice, Greenwich's duty to defend has or should

20  terminate. *See MidMountain Contractors Inc.*, 893 F. Supp. 2d at 1117.[4]

21

22      [3] Travelers' policy language states that, for coverage to exist, property damage must be "caused by" the acts of UGSI or its subcontractor during the performance of its work under the contract between Walsh and UGSI.

23      [4] At oral argument, Greenwich clarified it is asserting that, once UGSI was dismissed, there was no potential for indemnity coverage and, thus, the duty to defend terminated. The underlying litigation is still pending and Greenwich has not sufficiently shown there is no potential for coverage under its policy. Therefore,

24

1    For the above stated reasons, the Court finds Walsh's motion for partial summary

2    judgment related to Greenwich should be granted and Greenwich's motion for partial summary

3    judgment should be denied.

4        D.  Walsh's Tender to Arch

5    Arch has filed a Motion for Summary Judgment seeking dismissal from this action. Dkt.

6    36. Arch argues Walsh never tendered the underlying action to Arch. *Id*. Therefore, under

7    Washington's selective tender rule, Arch's duty to defend was never invoked and Travelers

8    cannot attempt to recover from Arch. Travelers opposes the Motion and asserts the Motion

9    should be denied because Arch has not shown there is no genuine issue of material fact regarding

10   whether Walsh tendered a defense to Arch. Dkt. 56.

11   Washington law establishes that, to tender a defense, "the insured must affirmatively

12   inform the insurer that its participation is desired." *Unigard Ins. Co. v. Leven*, 97 Wash.App.

13   417, 427 (1999). *Id. Leven* places the burden of first action—of "affirmatively" requesting the

14   insurer's involvement—on the insured. "'[A]n insurer cannot be expected to anticipate when or

15   if an insured will make a claim for coverage.'" *Grifin v. Allstate Ins. Co.,* 108 Wash.App. 133,

16   140 (2001) (alteration in original) (quoting *Leven*, 97 Wash.App. at 427). As such, "[t]he duties

17   to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity

18   is tendered." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 421 (2008)

19   (emphasis in original).

20   The selective tender rule "states that where an insured has not tendered a claim to an

21   insurer, that insurer is excused from its duty to contribute to a settlement of the claim." *Mut. of*

22

23   _____

    Greenwich's argument that there is no duty to defend because there is no indemnity based on UGSI's dismissal is
24   unpersuasive.

*Enumclaw Ins. Co.*, 164 Wash.2d at 421. The selective tender rule "has sound underpinnings" because it "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts." *Id.* at 421-22.

> An insured may choose not to tender a claim to its insurer for a variety of reasons. Like a driver involved in a minor accident, an insured may choose not to tender in order to avoid a premium increase. The insured may also want to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer. Whatever its reasons, an insured has the prerogative not to tender to a particular insurer.

*Mut. of Enumclaw Ins. Co.*, 164 Wash. 2d at 421–22.

*Evidence.* Arch issued an insurance policy to Walsh for a policy period from June 1, 2014 though June 1, 2015. Dkt. 37, Persoon Dec., ¶ 1; *see also* Dkt. 37 at 5-679. After Walsh received the unfiled complaint in the underlying action, Douglas Persoon, a Walsh employee, contacted Gallagher Bassett, a third-party administrator. Dkt. 69 at 16, 18 (Persoon Dec.). Walsh was "essentially putting in notice of a claim." *Id.* at 18. Mr. Persoon stated he also drafted tenders to the relevant subcontractors and suppliers and their liability carriers. *Id.* Mr. Persoon testified that his tender to Arch was for informational purposes only. *Id.* at 22, 44.

Gallagher Bassett notified Arch of the claim by email. Dkt. 69 at 105. Gallagher Bassett's claim notes indicate that, as of July 6, 2020, Mr. Persoon had not received responses from the tenders submitted to the subcontractors, but the underlying action had been filed and Walsh had been served. Dkt. 57-1 at 9. On July 21, 2020, Gallagher Bassett's claim notes appear to show Mr. Persoon provided Gallagher Bassett with the underlying complaint; Gallagher Bassett notified Arch it was performing a conflict check on the coverage issue. *Id.* at 11.

Evidence shows Walsh, through Gallagher Bassett, assigned Ahlers Cressman to defend Walsh in the underlying action while Walsh awaited responses from the subcontractors' insurance providers. Dkt. 69 at 56. Walsh paid for those defense fees. Dkt. 69 at 56. A

representative from Arch, Joel Sternstein, also testified that Arch never paid any money in the defense of Walsh. Dkt. 69 at 110. The record does reflect checks were issued to Ahlers Cressman from Gallagher Bassett/Arch for fees related to the underlying action. Dkt. 57-5.

The evidence shows that Arch, though Gallagher Bassett, issued letters to Walsh regarding whether the Arch policy provided coverage for the claims alleged in the underlying action. Dkts. 57-2, 57-3. A March 30, 2021 letter from Gallagher Bassett to Mr. Persoon states that Arch was investigating the matter and agreed to defend Walsh in the underlying action pursuant to a reservation of rights. Dkt. 57-3; *see also* Dkt. 69 at 61, 63. Mr. Sternstein states that Arch's letter regarding defending Walsh implied that Arch was only agreeing to defend Walsh if Walsh asked Arch to defend. Dkt. 69 at 123. He testified that Walsh did not tender the underlying claim to Arch and did not seek coverage from Arch. *Id*. at 107.

Additionally, Mr. Persoon testified that Walsh never tendered the underlying claim to Arch and never requested defense and indemnity from Arch in relation to the underlying action. *Id*. He further states that he never directed Arch to pay any money in defense costs related to the underlying action. *Id*. at 30. It is Walsh's position that it has not "tapped into the Arch policy." *Id*. at 57. "Walsh intentionally did not tender its defense to Arch to avoid incurring the deductible, and to preserve each Arch policy as an asset to be deployed later in the underlying lawsuit or for potential future claims." Dkt. 37, Persoon Dec., ¶ 5.

*Analysis*. Arch has put forth evidence showing Walsh did not affirmatively tender a defense to Arch. Rather, Walsh provided informational communications to Arch to determine if there was coverage under the Arch policy. During that time, Walsh was attempting to obtain defense coverage under the subcontractors' insurance policies. Representatives from both Walsh and Arch state that Walsh never affirmatively tendered a defense to Arch.

1    While there is evidence that Gallagher Bassett/Arch sent a payment to Walsh's counsel in

2    the underlying action, this does not create a genuine issue of material fact. Mr. Persoon testified

3    that it was his understanding Walsh paid Ahlers Cressman, legal counsel for Walsh, for work

4    related to the underlying action while Walsh awaited responses to the tenders of defense to the

5    subcontractors' insurance companies. Dkt. 69 at 56, 66. Further, Mr. Sternstein testified that

6    Arch never paid any money in the defense of Walsh and that Walsh hired and paid for the

7    defense by Ahlers Cressman. *Id*. at 110. The Court finds the check stubs from Gallagher Bassett

8    to Ahlers Cressman that reference Arch is not sufficient to create a genuine issue of material fact

9    regarding whether Walsh affirmatively tendered a defense to Arch.

10    There is also evidence that Arch communicated with Walsh, through Gallagher Bassett,

11    explaining Arch's coverage position. *See* Dkts. 57-3, 57-4. The letters state that Arch agreed to

12    defend Walsh in the underlying action pursuant to a reservation of rights. Arch has put forth

13    evidence that the "agreed to" language means that *if* Walsh were to affirmatively tender a

14    defense, Arch would accept the tender with a reservation of rights. Dkt. 69 at 123. There is no

15    evidence in the record refuting Arch's explanation of the "agreed to defend" language of the

16    letter. Furthermore, regardless of the language in Gallagher Bassett's letters to Walsh, the

17    undisputed evidence shows Walsh never affirmatively tendered a defense to Arch.

18    Arch has presented evidence showing Walsh has not affirmatively tendered a defense to

19    Arch, which Travelers has not refuted. Therefore, the Court finds Arch's Motion should be

20    granted. *See Illinois Nat'l Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 2021 WL 4476868, at *5

21    (W.D. Wash. Sept. 30, 2021) ("[m]ere notice of a claim is insufficient to establish tender,

22    whereby an insured must affirmatively inform the insurer that its participation is desired"); *XL*

23    *Specialty Ins. Co. v. Progressive Cas. Ins. Co.*, 411 F. App'x 78, 81 (9th Cir. 2011) (finding

24

emails requesting a determination of whether coverage existed under a policy did not rise to the level of an affirmative request for assistance). However, as the underlying lawsuit remains pending, the Court finds Walsh could still tender a defense to Arch or Walsh could assign its rights to Travelers. Therefore, the Court finds Arch should be dismissed without prejudice.

## IV.    Conclusion

Based on the evidence presented to this Court, the Court recommends:

- Travelers' motion for partial summary judgment (Dkt. 32) be denied;

- Greenwich's motion for partial summary judgment (Dkt. 49) be denied;

- Walsh's motion for partial summary judgment related to Travelers (Dkt. 48) be granted-in-part and denied-in-part. The Court finds the FAC and TPC triggered Travelers' duty to defend Walsh as an additional insured. However, the Court recommends Walsh's request for a declaration stating Travelers' duty to defend includes any defense costs incurred between the initiation of the underlying action and Travelers' acceptance of Walsh's tender with a reservation of rights be denied;

- Walsh's motion for partial summary judgment as to Greenwich (Dkt. 44) be granted. The Court finds the FAC and TPC triggered Greenwich's duty to defend Walsh as an additional insured. Greenwich has not shown there is a genuine dispute of material fact regarding whether Greenwich breached that duty to defend. And, while Greenwich has requested a Rule 56(d) continuance to obtain evidence to show the breach is excused, Greenwich failed to meet the requirements of a Rule 56(d) request to conduct additional discovery.

1

- Arch's motion for summary judgment (Dkt. 36) be granted and Arch be dismissed

2

  without prejudice.

3

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4

fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

5

6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

7

objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

8

*Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

9

imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on

10

October 13, 2023, as noted in the caption.

11

Dated this 28th day of September, 2023.

12

13

David W. Christel
Chief United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 27